# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LARRY BANKS (#B-42423), | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 C 4334 |
| | ) | |
| vs. | ) | |
| | ) | Judge Ronald A. Guzmán |
| SGT. ELWOOD and LT. JOHNSON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 claiming that defendants violated his constitutional rights by using unjustified force against him and by acting with deliberate indifference to his serious medical needs. For the reasons stated in this order, defendants' uncontested motion for summary judgment is granted.

## Facts

Together with their motion for summary judgment, defendants included a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" [document no. 58], as required by circuit precedent. That notice explained in detail the requirements of the Local Rules governing summary judgment and warned the plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). In view of the plaintiff's failure to respond to the defendants' motion, the following facts, all supported by the record, are undisputed for purposes of the summary judgment motion.

Plaintiff, currently an Illinois state prisoner, was a pretrial detainee at the Cook County Jail ("Jail") at the time of the events giving rise to this lawsuit. (Defs.' LR 56.1(a) Stmt. ¶ 1.) Defendants, James Elwood and Katie Johnson, are and were correctional officers at the jail at all times relevant to this action. (*Id.* ¶¶ 14, 53.)

On December 13, 2011, Jail officers Romo and Munoz, who are not named as defendants, escorted an inmate to the cell he shared with plaintiff. (*Id.* ¶ 2.) Plaintiff charged out of his cell as the officers opened the door. (*Id.*) Officer Romo put up his hands and told plaintiff to stop, but plaintiff screamed, "I ain't fucking locking up," and "Fuck all you mother fuckers." (*Id.* ¶ 3.)

Despite plaintiff's resistance and refusal to obey orders, the officers were eventually able to take him to the ground and handcuff him. (*Id.* ¶ 4.) However, Romo sustained a strained wrist during the struggle. (*Id.* ¶ 5.) As a result, the plaintiff was disciplined for battery and attempting to commit battery. (*Id.*)

The next day, plaintiff had a court hearing. (*Id.* ¶ 6.) Upon his return to the Jail, he was placed in a holding cell in the Jail's Receiving Classification Diagnostic Center ["RCDC," or "Receiving"]. (*Id.* ¶ 7.) Receiving is a high security area where all new detainees are processed into the Jail. (*Id.*)

The following day, Jail officer Aquino, who is not a defendant, arrived to take plaintiff to Division 9, his regular housing unit. (*Id.* ¶ 8.) Plaintiff said that he did not want to go to Division 9 and refused Aquino's repeated orders to submit to being handcuffed and walk to Division 9. (*Id.* ¶¶ 9, 11.)

Plaintiff insisted, instead, on seeing a psychologist. (*Id.* ¶ 13.) Because there was no psychologist on duty at that hour (it was about 1:30 a.m.), Aquino told plaintiff he would have to wait until the morning shift to see a psychologist. (*Id.*)

Aquino called his superior officer, Defendant Elwood, to inform him that plaintiff was disobeying orders to stand up, be handcuffed and go to Division 9. (*Id.* ¶ 14.) Elwood therefore went to plaintiff's holding cell to provide assistance and regain control over plaintiff. (*Id.* ¶ 15.) Elwood was unfamiliar with plaintiff, and before that day had not encountered or experienced any problems with him. (*Id.* ¶ 16.)

Jail policy dictates that inmates be handcuffed whenever they are transported from one area in the Jail to another. (*Id.* ¶ 17.) Because plaintiff refused to stand up and be handcuffed, he could not be transported to Division 9. (*Id.*) Elwood regarded plaintiff as posing a high risk: not only was he refusing to obey orders, but he had also attempted to escape from his cell and had committed a battery on an officer only a day or two earlier. (*Id.* ¶¶ 18, 19.) Furthermore, aside from plaintiff's history of violence, Receiving is a high security area. (*Id.* ¶ 20.)

Elwood gave plaintiff direct verbal orders to stand up and accede to being handcuffed. (*Id.* ¶ 21.) Plaintiff refused, again demanding to see a psychologist. (*Id.* ¶¶ 22, 23.) Elwood and other officers tried to explain to plaintiff that he could see a psychologist in the morning, but he continued to disregard repeated orders to stand up. (*Id.* ¶¶ 24-26.)

Elwood warned plaintiff that he would have to spray him with OC ("Oleoresin Capsicum," or cayenne pepper) spray if plaintiff refused to cooperate. (*Id.* ¶ 27.) Elwood then gave plaintiff a final, direct, verbal order to stand up. (*Id.* ¶ 28.) Plaintiff refused, opened up his arms, gestured to Elwood to spray him and said, "Hit me with it." (*Id.* ¶ 30.)

For reasons of security, control, and discipline, detainees must obey correctional staff's orders. (*Id.* ¶ 40.) When an inmate refuses to obey orders, the inmate is flouting the officer's authority and attempting to assert control. (*Id.* ¶ 41.) Such loss of authority jeopardizes the safety of the jail staff and other inmates. (*Id.* ¶ 42.)

The Cook County Department of Corrections permits trained personnel to deploy chemical agents to enforce compliance with lawful commands. (*Id.* ¶¶ 31, 39.) Officers are required to use the amount of spray reasonably necessary to restore order. (*Id*. ¶ 45.) Once the situation is under control, the officer must discontinue deploying the OC spray. (*Id.*) The use of OC spray is believed to be a more humane and effective manner of subduing an inmate than trying to physically overpower him or her. (*Id.* ¶ 47.) In addition, the use of OC spray instead of physical force reduces the risks of assaults against and injuries to the officers. (*Id.*)

Defendant Elwood has undergone the Department's rigorous chemical spray training program and is therefore authorized to carry and use OC spray. (*Id.* ¶¶ 33-37.) Both defendants Elwood and Johnson were sprayed with OC spray as part of their training. (*Id.* ¶ 38.)

In the instant case, Elwood deployed OC spray because direct verbal orders were unsuccessful. (*Id.* ¶ 48.) Plaintiff specifically admitted at his deposition that he refused orders to stand up until he was sprayed with OC spray. (*Id.*)

After he was sprayed, plaintiff was directed to rinse his face off in the sink in the holding cell. (*Id.* ¶ 49.) He was then "decontaminated" in accordance with Cook County Department of Corrections policy. (*Id*. ¶ 50.) Officers assisted the plaintiff with rinsing off his face and flushing his eyes with cool water. (*Id.* ¶¶ 51, 52.)

Afterwards, defendant Elwood contacted defendant Johnson to inform her that he had been forced to spray plaintiff with OC spray and that the inmate was being taken to Cermak Health Services for a medical evaluation. (*Id.* ¶ 53.) Johnson was not present when the OC spray was deployed. (*Id.* ¶ 54.) Rather, she responded to the scene based on Elwood's report. (*Id.* ¶¶ 55, 56.) Johnson and Elwood immediately escorted the plaintiff to the health care unit for medical treatment. (*Id.* ¶ 57.)

The medical staff examined plaintiff and listened to his complaints of skin irritation and mild irritation to his eyes. (*Id.* ¶¶ 58, 59.) Although plaintiff was experiencing mild pain and his eyes were red, Dr. Ayala observed him to be awake and oriented, with no shortness of breath, chest pains, or headaches. (*Id.* ¶ 60.) The doctor found that the plaintiff's central nervous system was functioning normally, and that his cardiovascular system was in order. (*Id.*) Moreover, a pulmonary exam reflected no issues. (*Id.*) The medical staff decontaminated plaintiff again with cold water, whereupon the doctor cleared him to return to Division 9. (*Id.* ¶ 61.) Later, a psych specialist performed a mental health analysis and likewise cleared plaintiff to return to the population after instructing him on how to access mental health treatment. (*Id.* ¶ 63.)

Defendants have submitted a video of the incident for *in camera* review. The DVD entirely substantiates defendants' account. The DVD (which features audio) starts with defendant Elwood attempting to reason with plaintiff, then warning him. Notwithstanding plaintiff's unyielding attitude, all of the officers and plaintiff remain remarkably calm, and the situation does not escalate. Finally, Elwood, at plaintiff's insistence, deploys a very short (literally one-second) burst of OC spray. While plaintiff coughs and groans and paces, the

officers tell him to rinse himself off. Soon, an individual guides him to the wash basin. For several minutes, plaintiff sponges himself off and complains, as the officers watch and encourage him from outside the holding cell.

Plaintiff was charged with, and found guilty of, committing an act that requires personnel to use force. (*Id.* ¶¶ 65, 66.) As a result, he spent twenty days in segregation. (*Id.* ¶ 66.)

About a month later, plaintiff filed a grievance regarding the OC spray incident. (*Id.* ¶ 73.) Plaintiff's grievance was rejected, but he did not file an appeal after receiving the response from his correctional rehabilitation worker ("CRW"). (*Id.* ¶¶ 74, 75.)

On January 19, 2012, the plaintiff submitted a second grievance, which was rejected as untimely. (*Id.* ¶¶ 73, 77-78.)

On January 31, 2012, the CRW refused to process, also because of untimeliness, a handwritten document from plaintiff that again alluded to the OC spray incident.

## Discussion

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Universities Research Assocs., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 849 (7th Cir. 2010) (quotation omitted).

The Prison Litigation Reform Act of 1996 ("PLRA") states that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a); *see Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011); *Jones v. Bock*, 549 U.S. 199, 204 (2007). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Howard v. Maselko*, No. 11 C 9278, 2013 WL 1707955, at *2 (N.D. Ill. Apr. 19, 2013). Defendants bear the burden of pleading and proving failure to exhaust. *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) (citing *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)).

To satisfy the PLRA's exhaustion requirement, a prisoner "must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). An inmate must comply with the rules established by the State with respect to the form, timeliness,

and content of grievances. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002). If a prisoner fails to properly avail himself of the prison's or jail's grievance process, he may lose his right to sue. *Massey*, 196 F.3d at 733; *Howard*, 2013 WL 1707955, at *2.

The record shows that plaintiff attempted to file three grievances, but two of them were rejected as untimely. Moreover, it establishes that the one timely grievance was decided against plaintiff, who did not file an appeal of that decision. Because the undisputed facts show that plaintiff did not exhaust administrative remedies, he cannot prevail on his claims. *See Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999); *Martin v. Dart*, No. 10 C 5920, 2012 WL 2046511, at *2 (N.D. Ill. Jun. 4, 2012).

Moreover, even if plaintiff had complied with the exhaustion requirement, he has not raised a triable issue of fact regarding whether defendant Elwood's use of force was constitutionally excessive.[1] In the jail context, force is "excessive" if it involves the "'unnecessary and wanton infliction of pain.'" *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 667 (7th Cir. 2012) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). When jailers are accused of using excessive force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). Factors relevant to that inquiry include whether jail officials perceived a threat to their safety and that of the inmates, whether there was a genuine need for the application of force, whether the

---

[1] The record establishes that defendant Johnson was not at the scene, or even yet aware of any disturbance, at the time Elwood deployed the OC spray.

force used was commensurate with the need for force, the extent of any injury inflicted, and the efforts, if any, the jail officials made to temper the severity of the force. *Rice*, 675 F.3d at 668; *Whitley*, 475 U.S. at 321; *see Forrest v. Prine*, 620 F.3d 739, 744-45 (7th Cir. 2010); *Lewis v. Downey*, 581 F.3d 467, 475-77 (7th Cir. 2009).

Each of these factors weighs in favor of defendant Elwood. First, multiple correctional officers attempted to coax plaintiff into cooperating and promised him psychological attention in a few hours. Second, plaintiff had already demonstrated that he was a security risk. Third, at the time of the disturbance, plaintiff was in a high security area. Fourth, Elwood warned plaintiff that he would have to resort to force if plaintiff continued to refuse to cooperate. Fifth, Elwood did not strike or physically struggle with plaintiff and used a very short volley of OC spray. Sixth, Elwood remained calm, collected, and matter-of-fact throughout the encounter, never appearing to lose his temper. Seventh, no further force was employed once the quick shot of OC spray immobilized plaintiff. Eighth, the OC spray caused plaintiff temporary discomfort but no real injury. In short, the record establishes that Elwood used only the force required to secure plaintiff's compliance.

Inmates cannot decide which orders they will follow, and they cannot obtain legal recourse when they leave correctional officers with no other option than the use of reasonable force. Where, as here, an inmate's admitted refusal to obey a guard's commands necessitates the use of pepper spray to restore order, no constitutional violation is inflicted. *Compare Carr v. Beth*, 465 Fed. App'x 567, 571 (7th Cir. 2012); *see Burton v. Ruzicki*, 258 Fed. App'x 882, 885 (7th Cir. 2007) (correctional officers faced with insubordination by an inmate known to have disciplinary problems were justified in eventually using pepper spray in accordance with jail

protocol when verbal persuasion did not work). "[I]f an inmate cannot be persuaded to obey an order, some means must be used to compel compliance." *Burton*, 258 Fed. App'x at 885 (citations and internal punctuation omitted). The plaintiff chose, even invited, Elwood to use pepper spray instead of standing up and transferring to another unit. The relatively mild response to his recalcitrance did not rise to the level of excessive force.

The Court recognizes that summary judgment tends to be inappropriate in excessive force cases because the evidence surrounding an officer's use of force is often susceptible to different interpretations. *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010) (citing *Catlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir. 2009)). But having considered the defendants' exhibits, particularly the video recording of the altercation, the Court concludes that no reasonable juror could find in the plaintiff's favor on his excessive force claim.

Defendants are also entitled to judgment as a matter of law with respect to the plaintiff's claim that they refused him needed medical care. Correctional officials and health care providers may not act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Fields v. Smith*, 653 F.3d 550, 554 (7th Cir. 2011). Deliberate indifference has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle*, 429 U.S. at 103-04; *see Roe v. Elyea*, 631 F.3d 843, 862 (7th Cir. 2011). In the case at bar, the plaintiff cannot satisfy either element.

A serious medical condition is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would perceive the need for a doctor's

attention. *See Edwards v. Snyder*, 478 F.3d 827, 830-831 (7th Cir. 2007); *Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512-13 (7th Cir. 2005). A condition is also objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). "Exposure to pepper spray is not a serious medical need." *Bonnin v. Eau Claire Cnty.*, No. 03 C 0065, 2004 WL 67478, at *4 (W.D. Wis. Jan. 13, 2004); *see Rivera v. MacAdory*, No. 96 C4674, 1997 WL 17811, at *3 (N.D. Ill. Jan. 16, 1997) ("It is doubtful that the lingering unpleasant effects of the mace amounted to a 'serious medical need.'"). Because there is no evidence to suggest that plaintiff suffered anything more than temporary discomfort, his condition after being pepper sprayed was not a serious medical need.

Further, even the effects of the spray constituted a serious medical need, plaintiff has not presented any evidence that suggests defendants acted with deliberate indifference. The recording shows that immediately after Elwood sprayed plaintiff, he and other officers directed him to rinse himself off, led him to the sink in his cell, and told him to put more water on the jacket he was using as a wash cloth. Once a supervisor, defendant Johnson, arrived at the scene, plaintiff was taken to the medical unit for evaluation and treatment. Thus, the evidence establishes that defendants did not act with callous disregard for plaintiff's medical condition.

## Conclusion

For the foregoing reasons, defendants' motion for summary judgment [54] is granted and this case is terminated. If plaintiff wishes to appeal this final order, he may file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). Plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

**SO ORDERED.**                  **ENTERED: October 1, 2013**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**